(856 P.2d 944)

No. 67,686

In the Matter of the Application for a Writ of Habeas Corpus of LISA D. TOLLE.

Opinion filed July 2, 1993.

*Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Kevin O'Connor,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LARSON, P.J., LEWIS, J., and JOHN O. SANDERSON, District Judge, assigned.

LEWIS, J.: This is an appeal by the petitioner, Lisa D. Tolle (L.T.), from the denial of her petition for a writ of habeas corpus. We affirm the decision of the trial court.

L.T. was charged with the crime of aggravated incest. The facts which led to this charge are somewhat unusual.

The facts show that L.T. was placed for adoption by her birth mother when she was an infant. Upon reaching the age of majority, L.T. sought out and located her natural mother. At the time contact was reestablished, L.T.'s birth mother had a son, C.M. C.M. was L.T.'s half-brother.

At the time of the incident in question, L.T. was married and the mother of three children. At some point in time, apparently C.M. became aware that L.T. was engaged in an extramarital affair. C.M. used this information to allegedly blackmail L.T. into having sex with him. According to C.M., he and L.T. had sexual relations every other day for a period of nine months. At the time the sexual relationship was taking place between L.T. and C.M., L.T. was approximately 25 years of age, and C.M. was 12 years of age.

As a result of her relationship with her half-brother, L.T. was charged with aggravated incest. She avoided prosecution on that charge by entering into a diversion agreement in December 1990. This agreement basically provided that, if L.T. would abide by its conditions for a period of 36 months, the charges of aggravated incest would be dismissed. The agreement further stipulated that a violation of its terms and conditions would be a breach of the agreement and her prosecution on the charge of aggravated incest would be reinstituted.

One of the conditions of the diversion agreement was that L.T. avoid all contact with C.M. Approximately 14 months after entering into the agreement, L.T. was found to have violated its terms by having contact with C.M. After a hearing, the prosecution was ordered to go forward. We note that the contact which L.T. allegedly had with C.M. was not sexual in nature and, on at least one occasion, may have been initiated by the natural mother of both L.T. and C.M. Nevertheless, the trial court de-

termined that such contact was a violation of the diversion agreement. That finding is not at issue on this appeal.

L.T. filed a motion questioning the propriety of the ruling that she had violated the diversion agreement. She claimed that her violation of that agreement was not sufficiently "material" to warrant her prosecution for aggravated incest. This claim was placed before the trial court, which did not agree and denied the motion. L.T. then attempted to appeal this ruling, but that appeal was dismissed as interlocutory.

L.T. next challenged the validity of her prosecution by a petition for writ of habeas corpus. The trial court denied her petition, and this appeal followed. As noted, no issue is raised concerning the decision that L.T. had violated the diversion agreement. Accordingly, we do not question the propriety of that decision.

The trial court determined that habeas corpus was a proper vehicle in which to raise the issues presented on this appeal. That ruling was not appealed, and there is no issue as to the propriety of habeas corpus as a remedy.

This appeal involves the validity of the following provision of the diversion agreement:

"I understand and agree that if I violate the terms and conditions of this Diversion Agreement and am taken off Diversion, this case will then proceed to trial based solely upon the facts written below, and I will not be entitled to present additional evidence concerning guilt or innocence at that trial. I stipulate and agree as follows:

"Detective Barry Von Fange is employed by the Wichita Police Department as a detective and is assigned to the Exploited and Missing Children Unit. He investigates cases involving allegations of sexual abuse of children. In conjunction with his duties, he was assigned to investigate a case involving a [C.M.]. On May 23, 1990, Detective Von Fange interviewed [C.M.], who told Detective Von Fange that for the nine months preceding the interview he had had sexual intercourse every other day with his half-sister, Lisa D. Tolle. He said that he and Ms. Tolle have the same mother. He identified Ms. Tolle as a twenty-five year old white female, born December 31, 1965. [C.M.] stated that he is thirteen years old, born on February 12, 1977. [C.M.] described the act of intercourse as [C.M.] placing his penis in Ms. Tolle's vagina. He said that the acts of sexual intercourse occurred at 313 S. Martinson, in Sedgwick County, Kansas, the residence of Ms. Tolle. [C.M.] said that their relationship was discovered when his mother found a letter [C.M.] had written to Ms. Tolle, in which he stated that he planned to marry Ms. Tolle when he turns eighteen."

L.T. contends for various reasons that the provision set forth above is illegal and unconstitutional and cannot be enforced.

## ANALOGY TO PLEA OF GUILTY

L.T. argues that the trial court was required to conduct a hearing on whether her waiver of the right to present evidence was knowingly and voluntarily made. This argument, in effect, asks us to impose the steps required in accepting a plea of guilty to the acceptance of a diversion agreement. We conclude that this is clearly not the law in the State of Kansas.

By signing the diversion agreement, L.T. waived certain valuable constitutional rights. This waiver of rights was not given up without compensation. In exchange for L.T. entering into the agreement, the State waived its right to prosecute her for aggravated incest. L.T. had only to observe the provisions of the agreement to avoid prosecution altogether. This was not a one-sided agreement forced upon her by the prosecution. Both sides were represented by counsel, and the diversion agreement represents the end result of plea negotiations between L.T. and the State of Kansas. Under the facts shown, there is nothing to suggest that L.T. did not freely and voluntarily enter into the diversion agreement with a complete understanding of its terms. There is no claim of fraud, coercion, or overreaching by the State. Despite the absence of such a claim, L.T. argues that the trial court was required to treat it as a plea of guilty.

We conclude that this issue is controlled by our Supreme Court's decision in *White v. State*, 222 Kan. 709, 568 P.2d 112 (1977). In that case, the defendant was found guilty based upon stipulated facts which he had agreed to present to the trial court. Although the defendant entered a plea of not guilty to the charges, he argued that the trial court should not have accepted his stipulation without making the findings required for a plea of guilty. The Supreme Court disagreed:

"We turn first to his claim that the sentencing court erred in not proceeding under K.S.A. 22-3210. The gist of this contention is that his plea of not guilty, followed by the stipulation, in effect constituted the entry of a plea of guilty and thus the court was required to inform him of the consequences of his 'plea' and of the maximum penalty provided by law which might be imposed upon him, and that the court should have determined that the 'plea' was made voluntarily with understanding of the nature

of the charge and the consequences of the 'plea'; and that the court should have determined that there was a factual basis for the 'plea.'

"Before a plea of guilty may be accepted, K.S.A. 22-3210 requires the trial court to inform the defendant of the consequences of a plea of guilty and the maximum penalty provided by law which may be imposed upon the acceptance of such a plea, and to address the defendant personally and determine that the guilty plea is made voluntarily and with understanding of the nature of the charge and the consequences of the plea. The court must also determine that there is a factual basis for the plea. Basically, this procedure follows rule 11, F.R. Crim. P., compliance with which is held to be mandatory upon the federal courts in *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166, and which procedure is fastened upon the state courts as a requirement of due process. *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709. The enactment of K.S.A. 22-3210 followed *Boykin*. See *Widener v. State*, 210 Kan. 234, 237, 238, 499 P.2d 1123.

"We have no quarrel with the rule but we conclude that it is inapplicable here. White entered a plea of *not guilty*, and thus he retained all of the rights of such a plea, including the right to appeal upon conviction. The duty of the trial court to advise him of the effects of a possible *guilty* plea terminated upon his entry of a plea of *not guilty*.

"The mere fact that White stipulated as to the evidence did not amount to the entry of a plea of guilty. Stipulations between trial counsel—even without the written consent of the parties—are commonplace, and are binding upon the parties represented. Stipulations as to the evidence in criminal cases, waiving jury trial and consenting to trial to the court, are permissible under our statutes. *State v. Kinnell*, 197 Kan. 456, 419 P.2d 870; and see *State v. Teeslink*, 177 Kan. 268, 278 P.2d 591.

"We know of no case or statute holding that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement." 222 Kan. at 712-13.

With this reasoning, the Supreme Court held that the trial court did not err in approving the stipulation and that K.S.A. 22-3210 had no application to that process.

In *White*, the trial court was not required to find that the defendant entered into the stipulation of facts knowingly, freely, and voluntarily. The trial court was not required to treat that agreement as if it were a plea of guilty. The same principles apply to the matter now before this court. We are unable to distinguish *White* from this case to any meaningful degree. L.T. would have us impose the requirements of K.S.A. 22-3210 to the acceptance of a diversion agreement. That statute applies only to a plea of guilty and is not applicable to diversion agreements.

When a potential criminal defendant is represented by counsel and enters into a diversion agreement, that defendant should not be treated significantly differently than any other citizen of this state. This is particularly true in the absence of any claim of ignorance or lack of understanding by the defendant as to what was taking place. Diversion agreements, like plea agreements, are contractual in nature. *State v. Bullock*, 18 Kan. App. 2d 164, 849 P.2d 137, *rev. denied* 253 Kan. 861 (May 7, 1993). See *Aschan v. Auger*, 861 F.2d 520, 522 (8th Cir. 1988). In this state, a person is presumed to have read and understood the terms of any agreement he or she has signed and must abide by its terms in the absence of fraud, undue influence, or mutual mistake. *Albers v. Nelson*, 248 Kan. 575, 578-79, 809 P.2d 1194 (1991). L.T. does not allege fraud, undue influence, or mutual mistake. L.T. is presumed by the law of this state to have understood the terms of the diversion agreement which she voluntarily entered into, and she is bound by those terms. The diversion agreement did not require her to enter a plea of guilty, and, indeed, at such time as this matter reaches the trial court level, she remains free to enter a plea of not guilty to the information. The terms of the diversion agreement do not amount to a plea of guilty, and it is not to be treated as tantamount to a plea of guilty.

L.T. complains about being deprived of her constitutional right to present evidence at her trial. This argument conveniently ignores the fact that she bargained this right away in exchange for an opportunity to avoid prosecution. It is beyond argument that "all constitutional rights may be freely and voluntarily waived. Diversion is an example of this principle." *State v. Clevenger*, 235 Kan. 864, 868, 683 P.2d 1272 (1984). L.T. bargained away the constitutional right in question, and we hold her to that bargain.

We hold that a trial court is not required to treat the waiver of constitutional rights in a diversion agreement in the same manner as it treats a plea of guilty. In the absence of clear evidence to the contrary, a defendant or potential defendant is presumed to have known and understood the terms and conditions of a diversion agreement entered into with the assistance of counsel. If the diversion agreement includes the waiver of constitutional rights, the potential criminal defendant is presumed

to have waived those constitutional rights freely, voluntarily, and with a full understanding of the same. This is particularly true in the absence of any claim by the potential criminal defendant to the contrary.

Indeed, there is no statutory procedure in place for the type of hearing L.T. seeks. In this case, the trial court held a short hearing to accept the defendant's waiver of her right to a speedy trial. The defendant appeared at this hearing with counsel. Although the hearing was not held to specifically deal with the stipulation of facts or with any other provisions of the diversion agreement, it certainly gave L.T. an opportunity to raise any questions or objections she had to that agreement. We have examined the record, and L.T. raised no objections of any kind. She did not complain about the provisions concerning stipulations of facts or waiver of the right to present evidence. She did not indicate to the trial court that she did not understand what she was doing.

"The stipulation in this case was in writing. It was prepared and was signed by the defendant and his attorney prior to its presentation to the trial court. It was read aloud to the defendant in the presence of his attorney, Mr. Charles S. Scott, a capable and experienced practitioner of this bar. If petitioner had any objection to that stipulation, the time for complaint was then, not now.

"We note that even now, petitioner is not contending that he misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way. We conclude that the trial court did not err in approving the stipulation and that K.S.A. 22-3210 has no application here." White v. State, 222 Kan. at 713-14.

The words of our Supreme Court in White v. State, quoted above, could be used almost verbatim and apply with equal force in this matter.

There is no requirement in this state that a trial court determine that a potential defendant entered into a diversion agreement freely and voluntarily prior to approving the terms of that agreement. In an appropriate case where there is evidence that the defendant did not enter into the agreement freely and voluntarily and with a full understanding of his or her rights, this

issue may be raised to the trial court at any appropriate time after the diversion agreement has been executed.

## LEGALITY OF PROVISION IN QUESTION

L.T. next argues that the statutes relating to diversion agreements do not permit the inclusion of the provision in question. Thus, she argues, such a provision is illegal and may not be enforced. We disagree.

The statutes in this state pertaining to diversion agreements may be found at K.S.A. 22-2906 through 22-2912. We note that prior to statutory authorization in 1977, diversion was already "in existence in a number of counties." *State v. Greenlee*, 228 Kan. 712, 717, 620 P.2d 1132 (1980).

L.T. argues that, since our statutes did not expressly authorize a provision for trial by stipulated facts in felony cases, no such provision may be included in a diversion agreement. While the statutes may not have specifically authorized such a provision in felony cases, neither did they expressly prohibit such a provision. L.T. is asking that we declare illegal a clause in a diversion agreement providing for trial on stipulated facts. She asks us to do this despite the fact that such a clause is otherwise legal in this state. She asks us to void her waiver of the right to present evidence despite the fact that all constitutional rights may be knowingly and freely waived and that such a waiver is otherwise legal. We are not inclined to declare otherwise valid provisions illegal in the absence of a clear and precise statutory prohibition.

Our examination of the statutes relating to diversion agreements reveals a clear intent by the legislature to *require* the inclusion of certain provisions. We see no such intent to *prohibit* otherwise valid constitutional waivers. For instance, K.S.A. 1992 Supp. 22-2909 provides on several occasions that an agreement *shall include* certain terms. Yet that statute does not by its terms specifically prohibit any provision.

K.S.A. 1992 Supp. 22-2909(a) provides in relevant part:

*"The diversion agreement may include, but is not limited to,* provisions concerning payment of restitution, including court costs and diversion costs, residence in a specified facility, maintenance of gainful employment, and participation in programs offering medical, educational, vocational, social and psychological services, corrective and preventive guidance and other rehabilitative services." (Emphasis added.)

The emphasized language "may include, but is not limited to" indicates to us that the legislature was not seeking to limit what provisions could be placed in a diversion agreement. Had the legislature intended to do so, it would have been easily accomplished by simply striking the words "but is not limited to." It is true that the items listed in 22-2909(a) all appear to relate to payment of court costs and rehabilitative and educational programs. We do not think this fact limits the observation that this provision of the statute is indicative of the legislature's intent to not limit what can be placed in a diversion agreement.

K.S.A. 1992 Supp. 22-2909(c) requires that any diversion agreement involving a violation of K.S.A. 8-1567

"*shall include a stipulation,* agreed to by the defendant and the county or district attorney, of the facts upon which the charge is based and a provision that if the defendant fails to fulfill the terms of the specific diversion agreement and the criminal proceedings on the complaint are resumed, the proceedings, including any proceedings on appeal, shall be conducted on the record of the stipulation of facts relating to the complaint." (Emphasis added.)

L.T. argues that the lack of a similar provision concerning felony prosecution indicates that such provisions are not authorized in felony cases and are, therefore, illegal. Once again, we believe L.T.'s logic is incorrect. The fact that the legislature has required a stipulation of facts in DUI cases does not in any logical way indicate such a provision is *prohibited* in all other cases. In 1990, the legislature amended the statute to *require* that a defendant in DUI cases must also waive the right to counsel and to trial by jury. L. 1990, ch. 321 § 15. We are unable to see the logic of an argument that, by requiring certain provisions in DUI diversions, the legislature was prohibiting similar provisions in all other cases.

There is only one diversion statute which purports to state what *cannot be required* in a diversion agreement. K.S.A. 22-2910 reads as follows:

"No defendant shall be required to enter any plea to a criminal charge as a condition for diversion. No statements made by the defendant or counsel in any diversion conference or in any other discussion of a proposed diversion agreement shall be admissible as evidence in criminal proceedings on crimes charged or facts alleged in the complaint. Except for sentencing proceedings

and as otherwise provided in subsection (c) of K.S.A. 22-2909 and amendments thereto and as otherwise provided in K.S.A. 8-285 and 8-1567 and amendments to these sections, the following shall not be admissible as evidence in criminal proceedings which are resumed under K.S.A. 22-2911: (1) Participation in a diversion program; (2) the facts of such participation; or (3) the diversion agreement entered into."

This is the only statutory provision which attempts to state what can and cannot be done under a diversion agreement. This statute does not prohibit the use of the provision in question. This leads us to conclude that otherwise legal provisions are not prohibited from use in a diversion agreement.

There is nothing to indicate that the legislature intended to prohibit otherwise legal provisions from being included in a diversion agreement. The legislative scheme, with the exception of 22-2910, is one of *requiring* certain provisions in all diversion agreements. There is no indication, with the exception of 22-2910, that the legislature intended to control the entire negotiating process by prohibiting provisions that are otherwise legal and enforceable. We will not read such an intention into the statutes where it is not clearly expressed. It seems clear to us that, had the legislature wished to preclude all provisions not expressly authorized, it could have done so. The fact that no such prohibition can be found expressly stated is a clear indication that no such prohibition was intended.

The statutory interpretation urged by L.T. would limit the terms of a diversion agreement beyond the clear expression of the legislature. It would also greatly hinder the diversion process. The burden of proof remains with the prosecution at all times. The risk to the defendant is that she may violate the agreement and be prosecuted for the crime charged. The risk to the prosecution is that after the passage of 36 months it may be unable to secure the witnesses and evidence it needs to obtain a conviction. There is no question but that with the passage of time, witnesses die, witnesses move, witnesses disappear, and, for various reasons, witnesses' memories become faulty. A diversion agreement spanning 36 months may be impractical absent the inclusion of a stipulation of facts in the agreement. We believe that our interpretation is consistent with public policy and will allow the diversion program to continue to develop.

The most recent session of the legislature has taken action that renders the argument of L.T. moot as to future diversion agreements. Senate Bill 348 amended K.S.A. 22-2909(d) to read as follows:

"If a diversion agreement is entered into in lieu of further criminal proceedings on a complaint alleging a violation other than K.S.A. 8-1567 and amendments thereto, the diversion agreement may include a stipulation, agreed to by the defendant, the defendant's attorney if the defendant is represented by an attorney and the attorney general or county or district attorney, of the facts upon which the charge is based and a provision that if the defendant fails to fulfill the terms of the specific diversion agreement and the criminal proceedings on the complaint are resumed, the proceedings, including any proceedings on appeal, shall be conducted on the record of the stipulation of facts relating to the complaint."

This legislation makes it clear that a provision calling for trial on stipulated facts not be challenged in the future.

The legislature's action does not, however, change our position as outlined in this opinion. We consider the amendment as nothing more than an attempt to clarify the issues presented on this appeal. "Ordinarily, courts presume that by changing the language of a statute the legislature intends to change its effect. This presumption, however, may be strong or weak according to the circumstances, and may be wanting altogether in a particular case." *Citizens State Bank of Grainfield v. Kaiser,* 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

In view of the issues presented in this case, the presumption is "wanting altogether." The amendment does not alter the general intent of the legislature, which is not to make illegal otherwise legal provisions. There is no language to indicate that diversion agreements must be limited to certain terms. The amendment to K.S.A. 22-2909(d) does not indicate that L.T.'s diversion provision was illegal prior to the effective date of S. B. 348. It is merely an example of what an agreement "may include." It does not convince us that the legislature intended to prohibit otherwise legal conditions negotiated by the parties. The amendment simply does legislatively what we do judicially. It affirms that the provision in L.T.'s diversion agreement was legal and is enforceable.

Affirmed.