13 F.3d 407
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Kenneth SWANSON and Nancy Swanson, Plaintiffs-Appellants,
v.
Lynn FIELDS, Sheriff of Crawford County, Kansas, as an
individual and in his official capacity; Dennis Jameson, a
patrol officer for the City of Pittsburg, Kansas, as an
individual and in his official capacity, Defendants-Appellees.
 No. 93-3083.
 United States Court of Appeals, Tenth Circuit.
 Dec. 20, 1993.
 
 Before ANDERSON and EBEL, Circuit Judges, and WINDER,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs-appellants Kenneth and Nancy Swanson appeal the district court's grant of summary judgment in favor of defendants Sheriff Lynn Fields and Officer Dennis Jameson on the Swansons' civil rights and state tort claims. Because the officers were entitled to qualified immunity, based upon the undisputed facts, we affirm.
 
 
 3
 This suit grew out of a series of interactions, first between the Swansons and Sheriff Fields, and later involving Officer Jameson, which culminated in Mr. Swanson's arrest for driving under the influence of alcohol, reckless driving, disorderly conduct and resisting arrest, and in Mrs. Swanson's arrest for battery on a police officer. For purposes of this appeal, we look to the uncontroverted facts, resolving any factual disputes in favor of the Swansons.
 
 
 4
 At approximately 6:45 p.m. on July 24, 1990, the Swansons left their house to visit Mrs. Swanson's mother at a nursing home. Soon after pulling out, Mr. Swanson noticed a white Blazer behind them. Swanson took a right at the end of the street and the Blazer followed. At the next stop sign, Mr. Swanson told his wife that the car behind them was annoying him and that he was going to pull over and let the car pass. Appellants' App. Vol. VIII at 29. Mrs. Swanson looked back at the vehicle behind them. Id.
 
 
 5
 The Blazer was being driven by Sheriff Fields, who was, at the time, not wearing his uniform. Fields reports that the Swansons' vehicle had stopped approximately twenty-five to thirty feet before the stop sign and that he saw them both turn around and look at him. Id., Vol. V, Field's Dep. at 29, 31.
 
 
 6
 Mr. Swanson turned left onto Fourth Street and stopped to let Fields pass. Fields testified that as he drove by, Mr. Swanson started to move his car as though he was going to turn into Fields' passenger door. Id. at 31-32. Suspecting that there may be a problem, Fields pulled into a gravel parking lot and turned around to watch the Swansons.
 
 
 7
 Mr. Swanson was starting to turn down a street when he noticed Fields in the parking lot. Becoming annoyed, Swanson backed out of the intersection and pulled into the parking lot where the Sheriff was sitting. Id., Vol. VII at 41-42, 44. Swanson drove directly up to Fields' vehicle, stopped several feet from the driver's door, and asked "are you looking for trouble?" Id. at 44, 172; Vol. V, Field's Dep. at 33-34. To this, Fields answered "nobody slides up to me like that" and "I'll give you plenty of trouble." Id., Vol. VII at 44, 59; Vol. VIII at 33. Fields got out of his vehicle and grabbed Swanson's doorpost. Swanson then drove off, yelling "go to hell." Id., Vol. VII at 7, 56. When Mr. Swanson spoke to Fields, the Sheriff smelled the odor of alcohol on Swanson's breath. Id., Vol. V, Fields' Dep. at 39, 43.
 
 
 8
 Fields called for assistance to the sheriff's department but no one was available to intercept the Swansons. Fields then called the municipal police for Pittsburg, Kansas, and requested assistance. Fields continued to follow the Swansons, radioing their location to the Pittsburg police. When Mr. Swanson noticed that the white Blazer was again following him, he felt threatened and decided to go to the Pittsburg police department. Mr. Swanson cut through a park, and admits that he may have driven left of the center of the road so as to avoid hitting anyone with his right side mirror. Id., Vol. VII at 9, 59. In looking for the police department, Mr. Swanson turned into several dead end streets and backed out again. Fields remained three to four car lengths behind Mr. Swanson. Id. at 10, 67-68.
 
 
 9
 Mr. Swanson pulled into Tenth Street and saw Officer Jameson in his marked police car. Swanson immediately stopped the car in the driving lane, jumped out of his vehicle, and yelled to Jameson to arrest "that crazy son of a bitch." Id., Vol. VI, Jameson's Dep. at 13; Vol. VII at 72-73, 180. Mr. Swanson appeared agitated. Officer Jameson advised Swanson to legally park his car and that they would get matters resolved, but Mr. Swanson ignored this order and ran behind his vehicle. Id., Vol. VI, Jameson's Dep. at 14. Mr. Swanson then ran to the back of Fields' vehicle to get his license number, yelling "you son of a bitch." Id., Vol. V, Fields' Dep. at 49-50; Vol. VII at 180, 241.
 
 
 10
 When Mr. Swanson was approximately two feet away, the Sheriff displayed his badge in his right hand and yelled "I'm the Sheriff." Id., Vol. VII at 80-81; Vol. VI, Jameson Dep. at 17, 23. With his other hand, Fields grabbed Mr. Swanson by the back of the neck and pushed him up against the Blazer. The sheriff squeezed Mr. Swanson's neck while trying to handcuff him. Id., Vol. VII at 80, 87-88. Mr. Swanson tried to pull his left hand away. Id., Vol. V, Swanson's Dep. at corrected p. 85.
 
 
 11
 Mrs. Swanson looked out of her vehicle and saw Fields struggling with her husband. She ran to help her spouse, yelling "let my husband go you son of a bitch." Id., Vol. VIII at 42, 86; Vol. VI, see also Jameson's Dep. at 28-29. Officer Jameson grabbed Mrs. Swanson by the arms as she came at Officer Fields. Mrs. Swanson began to struggle vigorously, breaking free several times. Id., Vol. VIII at 43-45, 87; Vol. VI, Jameson's Dep. at 30. After Jameson believed that he had been battered, he arrested Mrs. Swanson and attempted to handcuff her. Id., Vol. VI, Jameson's Dep. at 30-32, 34. Mrs. Swanson resisted Jameson's efforts to place her in handcuffs. Id. at 36-37; Vol. VIII at 46-47. Officer Jameson pushed Mrs. Swanson forcefully against the Blazer twice, but Mrs. Swanson's head never hit the vehicle. Id., Vol. VIII at 87-89.
 
 
 12
 Mr. and Mrs. Swanson were both handcuffed, placed in a patrol car, and taken to the Pittsburg police department. There, Mr. Swanson refused to take any sobriety tests, electing instead to give up his license for a year. Id., Vol. VII at 93-95. When Mrs. Swanson complained that her handcuffs were too tight, they were removed. Id., Vol. VIII at 54. When Mr. Swanson also complained about his handcuffs, they were replaced with more comfortable ones. Id., Vol. VII at 234-35. After several hours in the Crawford County jail, plaintiffs made arrangements with a bail bondsman and were released.
 
 
 13
 Mr. Swanson's arrest for driving under the influence was based on Officer Jameson's observation that Swanson smelled from alcoholic beverages, had bloodshot eyes, poor balance or coordination, and difficulty in communicating. Id., Vol. V, Dep.Ex. 11. Mr. Swanson entered into a DUI diversionary agreement in which it was agreed that if he completed certain obligations under the diversion program, the charges against his wife and him would be dismissed with prejudice. Mr. Swanson has since completed the agreement and the charges have been dismissed.
 
 
 14
 The Swansons brought this action against the Sheriff and Officer Jameson, alleging that they were arrested without probable cause, that unreasonable force was used against them, that they were maliciously prosecuted, and that their property was unlawfully seized. The district court found that the officers were entitled to summary judgment as a matter of law on qualified immunity grounds. This appeal followed.
 
 
 15
 We review a grant of summary judgment de novo, applying the same standards as those used by the district court. Pride v. Does, 997 F.2d 712, 716 (10th Cir.1993). Summary judgment is appropriate when "the pleadings [and] depositions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When making this assessment, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 16
 In qualified immunity cases, the plaintiff bears an initial burden of showing that a public official's conduct violated the law, and that the law was clearly established when the alleged violation occurred. Hinton v. City of Elwood, 997 F.2d 774, 779 (10th Cir.1993). If this burden is met, the public official must show that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at that time. Id.
 
 Probable Cause for Arrest
 
 17
 The Swansons argue first that the district court erred in finding that the diversion agreement barred Mr. Swanson from challenging his arrest. In Kansas, a conviction precludes a criminal defendant from later claiming that he was arrested without probable cause. See, e.g., Earley v. Harry's IGA No. 1, 2, 3, 4, Inc., 573 P.2d 572 (Kan.1977). The district court held that because a DUI diversion agreement is tantamount to a conviction, Mr. Swanson was precluded from arguing that his arrest lacked probable cause.
 
 
 18
 In determining whether a plaintiff is estopped from litigating his Sec. 1983 claim, the federal court must apply state collateral estoppel rules. Franklin v. Thompson, 981 F.2d 1168, 1170 (10th Cir.1992). Although not directly addressing the preclusive effect of a DUI diversion agreement, the Kansas Supreme Court has indicated that entry into such an agreement is tantamount to a conviction on the charge. In State v. Clevenger, 683 P.2d 1272 (Kan.1984), the court analyzed the diversion's conviction-like nature, emphasizing that because a defendant stipulates to the facts constituting the offense and gives up the right to present evidence controverting the offense, "there is an admission by the defendant of the commission of the offense." Id. at 1275. The court also noted that the defendant must waive all constitutional rights guaranteed by the trial phase and that the penalties and conditions to be met are exactly the same as those imposed upon conviction, with the exception of incarceration. Id.
 
 
 19
 Based on this analysis, it appears that the Kansas courts would consider entry into a diversion agreement preclusive of a subsequent claim that the arrest lacked probable cause. By stipulating to the facts which constitute the offense and giving up the right to present evidence to the contrary, see, e.g., In re Tolle, 856 P.2d 944, 948 (Kan.Ct.App.1993), review denied, September 28, 1993, the defendant, in effect, stipulates to the existence of probable cause for the arrest.
 
 
 20
 Here, Mr. Swanson stipulated that Officer Jameson would testify as to his observations that Swanson smelled from alcohol, had bloodshot eyes, poor balance or coordination, and difficulty in communicating. See Appellants' App.Vol. V, Dep.Ex. 11. Swanson also gave up his right to contest this testimony. See id., DUI Diversionary Agreement, Dep.Ex. 1. Because Mr. Swanson, in essence, stipulated to a factual basis for the crime, he cannot now claim that his arrest was without probable cause.
 
 
 21
 Even if he were not precluded from challenging the validity of his arrest, Mr. Swanson could not succeed on his claim. A review of the record demonstrates the existence of probable cause to arrest Mr. Swanson for driving under the influence of alcohol, reckless driving, and disorderly conduct.
 
 
 22
 During his first encounter with Mr. Swanson, Sheriff Fields noted that Mr. Swanson smelled from alcohol, was belligerent, and appeared to be intoxicated by the look of his eyes and the smell about his breath. Id., Vol. V, Dep.Ex. 22. Sheriff Fields also observed some unusual driving by Mr. Swanson and later noted that Mr. Swanson was wobbling and swaying, his speech was confused, his attitude was combative, his clothing was mussed, and his ability to understand instructions was poor. Id. Officer Jameson also noted Mr. Swanson's odor of alcohol, bloodshot eyes, poor balance and coordination, and difficulty in communicating. Finally, Mr. Swanson admits that he consumed alcohol during the afternoon before the incidents. Id., Vol. VII at 30, 33.
 
 
 23
 These observations provided probable cause to arrest Mr. Swanson for driving under the influence of alcohol. See, e.g., Schmerber v. California, 384 U.S. 757, 768-69 (1966) (probable cause for arrest existed when driver's breath smelled from alcohol and driver's eyes were bloodshot, watery, and glassy); Summers v. Utah, 927 F.2d 1165, 1166 (10th Cir.1991) (plaintiff's operation of his vehicle, the scent of alcohol emanating from his vehicle, and plaintiff's refusal to take a field sobriety test provided probable cause for arrest).
 
 
 24
 Sheriff Fields also had probable cause to arrest Mr. Swanson for reckless driving and disorderly conduct. The Sheriff observed Mr. Swanson stop his vehicle twenty-five to thirty feet before a stop sign; pull his vehicle out towards Field's car after waving him by; begin to turn into a road, stop, and back out; rapidly pull into the gravel parking lot and stop his car within several feet of Field's vehicle; ask Fields aggressively whether he was looking for trouble; pull out of the parking lot yelling "go to hell;" drive in the center of the road through a crowded park; turn up and back out of several streets in Pittsburg; stop his car in the center of a driving lane; ignore a uniformed police officer's order to move his car to the side of the road; and run towards Fields yelling "you son of a bitch." In addition, Fields knew that Mr. Swanson smelled from alcohol and that he appeared intoxicated.
 
 
 25
 Based on these circumstances, Fields could well have believed that Mr. Swanson had operated his vehicle in a willful or wanton disregard for the safety of others, in violation of Kan.Stat.Ann. Sec. 8-1566, or that he had used offensive, obscene or abusive language or had engaged in noisy conduct tending reasonably to arouse alarm, anger, or resentment in others, in violation of Kan.Stat.Ann. Sec. 21-4101(c). See, e.g., State v. Walker, 430 P.2d 246, 250 (Kan.1967) (holding that reckless driving may be shown through violations of the rules of the road, including the failure to stay on the right side of the highway, and does not require proof that the driver exceeded the speed limit), cert. denied, 390 U.S. 905 (1968); State v. Whitehurst, 772 P.2d 1251, 1253 (Kan.Ct.App.1988) (holding that when vehicle stopped at a stop sign, proceeded forward, backed up past the stop sign, and then accelerated forward rapidly so as to throw gravel, the officer had a reasonable suspicion that the driver was guilty of reckless driving), review denied, March 22, 1989; State v. Beck, 682 P.2d 137, 140 (Kan.Ct.App.1984) (holding that where defendant, who was intoxicated and belligerent, swore several times at police officers, using words which could be interpreted as an offer to fight, there was sufficient evidence to sustain a conviction for disorderly conduct).
 
 
 26
 Based on the foregoing, we hold that Mr. Swanson has not demonstrated a genuine issue of material fact regarding the existence of probable cause for his arrest and that the officers were entitled to summary judgment on this claim. We note that Mrs. Swanson has not appealed the district court's finding of probable cause for her arrest and that, therefore, the summary judgment in favor of defendants on her claim of unlawful arrest was also proper.
 
 Excessive Force
 
 27
 The Swansons argue that the district court erred in granting summary judgment on their claim that the officers used excessive force. In Graham v. Connor, 490 U.S. 386, 397 (1989), the United States Supreme Court held that claims of excessive force in the course of an arrest should be analyzed under the Fourth Amendment reasonableness standard. Thus, to meet their initial burden, the Swansons were required to demonstrate that the officers' use of force was not " 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id.
 
 
 28
 The reasonableness inquiry must be undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allowance must be made "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir.1991). Three criteria have been identified as relevant to this inquiry: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Hinton, 997 F.2d at 780. Applying these criteria to the instant case, we conclude that the Swansons have not demonstrated a factual issue as to whether the force applied by Fields and Jameson was excessive.
 
 
 29
 Sheriff Fields was faced with a belligerent, and possibly intoxicated, suspect who had already made aggressive movements towards Fields, with his vehicle, on two occasions. The crimes for which he was suspected, that is, reckless driving, disorderly conduct, and driving under the influence, are fairly serious. It would be reasonable to believe that Mr. Swanson posed an immediate threat to Fields' safety in that he was running at the officer yelling "you son of a bitch." Finally, Mr. Swanson admits that he resisted Sheriff Fields' efforts to handcuff his left wrist. Based on these circumstances, it is clear that Sheriff Fields' act of grabbing Mr. Swanson by the back of the neck and pushing him up against the Blazer was reasonable under the circumstances.
 
 
 30
 So too, Officer Jameson acted reasonably in twice pushing Mrs. Swanson up against the Blazer when she was actively trying to attack the Sheriff and when she was offering such a degree of resistance that she broke free on several occasions. Moreover, we have held that placing a suspect in tight handcuffs does not rise to the level of a constitutional violation. Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir.1990). We conclude, therefore, that the Swansons did not meet their burden of showing a genuine issue of fact regarding the reasonableness of the officers' conduct and that summary judgment on the excessive force claims was appropriate.
 
 
 31
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3