NOT DESIGNATED FOR PUBLICATION

No. 127,268

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARANDA DELANEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RODGER L. WOODS, judge. Submitted without oral argument. Opinion filed January 16, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Chelsea Anderson*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., HILL, J., and JOAN M. LOWDON, District Judge, assigned.

PER CURIAM: This appeal focuses on whether a district court can, in a criminal prosecution, legally order a new diversion agreement after a prior agreement has been revoked. Fundamental contract law principles and the statutes controlling diversion agreements convince us that the courts cannot do so.

1

*A revoked deferred prosecution agreement leads to a conviction after a trial on stipulated facts.*

In April 2022, the State charged Maranda Delaney with two drug crimes: possession of an opiate—Oxycodone—in violation of K.S.A. 21-5706(a) and possession of drug paraphernalia. The State and Delaney entered into a diversion agreement where the State agreed to defer prosecution for 12 months. The agreement provided that if Delaney abided by the conditions of the diversion agreement during that time, she would not be prosecuted. Delaney stipulated to facts that could be used against her at trial.

Before the 12-month period expired, the State alleged that Delaney had violated her diversion agreement and asked the court to set the matter on the bench trial docket.

Delaney admitted to some of the violations but not all. After hearing the evidence, the court found that Delaney had violated her agreement. Delaney then asked the court to reinstate diversion, arguing the diversion agreement was ambiguous in the language regarding revocation of diversion. The district court ruled the agreement was unambiguous and that the court had no legal reason to reinstate diversion. The State asked the district court to set the matter for a bench trial, and the court did.

At the bench trial, Delaney argued that there was insufficient evidence to convict her of unlawfully possessing an opiate because she had stipulated *only* to possessing Oxycodone but *not* that Oxycodone was an opiate. The court found Delaney guilty of possessing an opiate on those stipulated facts. The court stated that K.S.A. 21-5701(a) incorporates the controlled substance schedules and that Oxycodone is, by statutory definition, an opiate. The court also found her guilty of possessing drug paraphernalia—a pipe and a straw. The court sentenced Delaney to a suspended 11-month prison term and placed her on supervised probation.

2

We must examine two questions in this appeal. First, was the revocation of this diversion agreement proper? Second, are Delaney's convictions legally sound and are they supported by sufficient evidence?

*We find no legal error in the revocation of this agreement.*

In Kansas, after a complaint charging a defendant with the commission of a crime has been filed—but before a conviction—the State may propose a diversion agreement. K.S.A. 22-2907(a). A diversion agreement is "'the specification of formal terms and conditions which a defendant must fulfill in order to have the charges against him or her dismissed.'" *State v. Chamberlain*, 280 Kan. 241, 245, 120 P.3d 319 (2005).

Diversion agreements are governed by statute. See K.S.A. 22-2906 through K.S.A. 22-2912; *In re Habeas Corpus Application of Tolle*, 18 Kan. App. 2d 491, 498, 856 P.2d 944 (1993). K.S.A. 22-2909(e) states that diversion agreements may include "a provision that if the defendant fails to fulfill the terms of the specific diversion agreement and the criminal proceedings in the complaint are resumed, the proceedings, including any proceedings on appeal, shall be conducted on the record of the stipulation of facts relating to the complaint." The legal consequences of breaching the terms of a diversion agreement are also statutory and provide that:

> "(a) If the county or district attorney finds at the termination of the diversion period or any time prior to the termination of the diversion period that the defendant has failed to fulfill the terms of the specific diversion agreement, the county or district attorney shall inform the district court of such finding and the district court, after finding that the defendant has failed to fulfill the terms of the specific diversion agreement at a hearing thereon, shall resume the criminal proceedings on the complaint." K.S.A. 22-2911(a).

3

The State moved to revoke the diversion agreement because Delaney failed to pay the necessary court costs and fees, missed eight urine analyses, used methadone and opioid medications, and falsified community service hours. In July 2023, the district court revoked probation and set the case for trial. Delaney moved to consider reinstatement of diversion, arguing that the agreement gave the district court the power to reinstate diversion and that the diversion was ambiguous. The court declined.

To us, Delaney contends the district court incorrectly found that it did not have the authority to reinstate her diversion and thus made an error of law. She also argues that three provisions in the agreement gave the court authority to reinstate diversion. She alternatively argues the agreement was ambiguous and should be interpreted in her favor.

Delaney argues that these three provisions of the agreement create an ambiguity concerning the district court's powers to reinstate diversion:

1. "Should you violate any of the conditions of this agreement and its supervision, the District Attorney may revoke or modify any conditions of this Diversion Agreement and Program, change the period of your supervision, or ask the Court to reinstate this case on the trial docket for further prosecution."

2. "I freely and voluntarily waive my right to a preliminary hearing to which I might be entitled in this case and agree that if I violate the terms of my Diversion Program, that this case may be immediately set for trial and I will not be entitled to a preliminary hearing."

3. "I understand and agree that if I violate the terms of the conditions of this Diversion Agreement and am taken off Diversion, this case will proceed to trial based solely upon the stipulated facts, and I will not be entitled nor will I attempt to present additional evidence concerning guilt or innocence at that trial."

In response, the State argues that the diversion agreement was unambiguous; it is consistent with K.S.A. 22-2911(a); and did not give the district court discretion to reinstate diversion.

4

*An examination of each of those three provisions shows why the court did not err.*

*The First Provision*

The first provision identified by Delaney as ambiguous states that the "District Attorney may revoke or modify . . . or ask the Court to reinstate this case on the trial docket for further prosecution." Delaney argues that the use of the word "ask" implies that the district court can deny the State's request and reimpose diversion. That interpretation is wrong because the agreement's language correctly reflects the statutory framework.

Unlike ordinary contracts, diversion agreements are governed by statute. *In re Habeas Corpus Application of Tolle*, 18 Kan. App. 2d at 498; see K.S.A. 22-2906 through K.S.A. 22-2912. When a defendant violates the terms of an agreement during the diversion period, the State "*shall* inform the district court of such finding and the district court, after finding that the defendant has failed to fulfill the terms of the specific diversion agreement at a hearing thereon, *shall* resume the criminal proceedings on the complaint." (Emphasis added.) K.S.A. 22-2911(a).

From this language—especially the use of the word "shall"—the statute provides that once the district court finds that diversion should be revoked, "the criminal proceedings which had been temporarily stayed are then reactivated." *State v. Dalton*, 21 Kan. App. 2d 50, 54, 895 P.2d 204 (1995). Thus, the use of the word "ask" in the diversion agreement reflects the reality, as the district court stated, that "[s]ince the State does not manage the Court's trial docket it must request a trial setting from the Court." This provision is not ambiguous.

5

*The Second Provision*

In the second provision, Delaney argues that the phrase "may be immediately set for trial" can be interpreted as giving the district court "discretion to set the case for trial or reinstate diversion." The entire sentence provides that if the terms of the agreement are violated, Delaney agrees that "this case may be immediately set for trial to the Court, and I will not be entitled to a preliminary hearing." This law recognizes that it is the court's docket to control, not the State's.

As the district court found, the use of the discretionary term "may" does not grant the court the choice to deny setting the case for trial, but it applies to the timing of the trial. The sentence clarifies that the case could be heard either immediately or in the future because the timing does not depend on the occurrence of a preliminary hearing. This interpretation also agrees with the statutory requirement that the district court "shall" resume the criminal proceedings on the complaint when it finds the agreement was violated. K.S.A. 22-2911(a).

*The Third Provision*

Delaney argues that the third provision sets out two "conditions precedent before proceeding to trial on the stipulated facts: (1) violation of the agreement terms, and (2) being taken off diversion." Thus, she argues, the second condition precedent is evidence that the agreement grants the district court discretion to reinstate diversion.

This interpretation conflicts with the statutory requirement in K.S.A. 22-2911(a), and Delaney admits as much. But she argues that the "parties were allowed to deviate from the statutory language." Delaney suggests that support for this allowed deviation in *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, 553-54, 304 P.3d 1226 (2013). *Pfeifer* held that K.S.A. 60-501 did not prohibit parties in an employment contract from

agreeing to a shorter statute of limitations than the statute provided because there was no prohibiting language. 297 Kan. at 553. The *Pfeifer* court's holding was specific to K.S.A. 60-501, and nothing suggests that the Supreme Court sought to create a generally applicable rule for contracts and thus could be analogized to this case. But even if the *Pfeifer* decision could inform this matter, the statute here actually contains language which is specifically contrary to Delaney's claim.

The statute, K.S.A. 22-2911(a), provides that a district court must resume proceedings "after finding that the defendant has failed to fulfill the terms of the specific diversion agreement." The terms of Delaney's diversion agreement do not diverge from the terms in the statute because before the district court could revoke diversion, "the State had the burden of proving by a preponderance of the evidence that [Delaney] violated or breached the terms of the diversion agreement." *State v. Dowdell*, No. 124,620, 2023 WL 3262432, at *6 (Kan. App. 2023) (citing *Neises v. Solomon State Bank*, 236 Kan. 767, 776, 696 P.2d 372 [1985]). Delaney's diversion agreement thus accounted for the reality that even if the State believes that Delaney violated the agreement's terms, it must still prove that violation to the court by a preponderance of the evidence for Delaney's diversion to be revoked and prosecution of the charges resumes.

Some fundamental contract law principles apply here. The court is not a party to this deferred prosecution agreement. But the court has the authority to approve the agreement once it is submitted because the court controls its docket. The State controls who is charged and what those charges are. Once the agreement is approved and the prosecution is deferred, then the State must prove to the court that the prosecution of the charges should resume. After that, the prosecution proceeds as any other criminal case. We see no authority in these statutes for the court to force the State to make a new agreement with a defendant.

7

The district court did not err when it denied Delaney's motion to reinstate diversion. The district court has no authority to reinstate diversion once it finds the State has proved a violation and there is no ambiguity in the diversion agreement.

*We reject Delaney's statutory interpretation.*

As part of her diversion agreement, Delaney stipulated that when officers searched her vehicle, they found a bottle of pills that was later determined to be filled with Oxycodone. Also in the agreement, Delaney acknowledged that if she violated the terms of the diversion agreement, her case would immediately be set for trial upon the stipulated facts without any opportunity to present additional evidence of guilt. At the diversion revocation hearing, the district court found that Delaney violated the diversion agreement by using methadone and opioids. At the bench trial, the district court listened to the parties' arguments and the reading of the stipulated facts and found Delaney guilty of possession of an opiate, K.S.A. 21-5706(a), and paraphernalia for use, K.S.A. 21-5709(b)(2).

To us, Delaney argues that the State has presented insufficient evidence to convict her under K.S.A. 21-5706(a) because Delaney stipulated to possessing Oxycodone and not an opiate. Delaney asserts that K.S.A. 21-5706(a) "does not incorporate any finding that Oxycodone is an opiate" and so the State needed evidence that Delaney possessed a substance meeting the definition of opiate.

Is there a loophole here?

This issue is resolved by the plain language of K.S.A. 21-5706(a). That law makes it "unlawful for any person to possess any opiates, opium or narcotic drugs, or [specific stimulants in Schedule II], and amendments thereto, or a controlled substance analog thereof." Delaney argues that "thereof" relates solely to "opiates, opium or narcotic" and

8

thus does not incorporate the statutory definition of a "controlled substance analog." But even if the use of "thereof" referred only to "opiates, opium, or narcotic" as Delaney suggests, courts would still have to look to the definition of "controlled substance analog" of opiates. The Legislature specifically defined the term "controlled substance analog" as

"a substance that is intended for human consumption, and at least one of the following:

(A) The chemical structure of the substance is substantially similar to the chemical structure of a controlled substance listed in or added to the schedules designated in K.S.A. 65-4105 or 65-4107, and amendments thereto." K.S.A. 21-5701(b)(1).

This court must "attempt to ascertain legislative intent though the statutory language enacted, giving common words their ordinary meanings." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). Thus, when the Legislature provides a defined term—here "controlled substance analog"—the clear intent is to refer readers to the specific definition in K.S.A. 21-5701(b)(1). And within that definition is a reference to the list of controlled substances in K.S.A. 65-4107 which includes Oxycodone as an opiate in subsection (b)(1)(O).

We find that K.S.A. 21-5706(a) incorporates the statutes listing Oxycodone as an opiate. Thus, the State only needed to prove that Delaney possessed Oxycodone to have sufficient evidence that she possessed an opiate.

There is no loophole here.

The State—through the agreement and its attendant stipulations by Delaney—presented sufficient evidence to sustain a finding of guilt.

Affirmed.

9