COMMONWEALTH vs. ARTHUR V. MURPHY.

Middlesex. March 7, 1983. — June 7, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Motor Vehicle,* Operating under the influence. *Constitutional Law,* Ex post facto law. *Practice, Criminal,* Admission to sufficient facts to warrant a finding.

A person who, prior to September 1, 1982, the effective date of G. L. c. 90, § 24(1)(a)(1), had been assigned by a District Court to an alcohol education program upon his admitting to sufficient facts to warrant a finding of guilty on a charge of operating a motor vehicle while under the influence of intoxicating liquor may, without violating either State or Federal prohibitions against ex post facto laws, or due process considerations, be subjected to the enhanced penalties prescribed by c. 90, § 24(1)(a)(1), if he is subsequently convicted on a pending complaint charging him with a similar violation. [321-325]

COMPLAINT received and sworn to in the Third Eastern Middlesex Division of the District Court Department on September 20, 1982.

A motion for amendment of the complaint was heard by *Nixon,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Pamela L. Hunt,* Assistant District Attorney, for the Commonwealth.

*Mark L. Donahue (Richard E. Blumsack* with him) for the defendant.

WILKINS, J. This appeal by the Commonwealth presents the question whether, in the circumstances, the defendant may constitutionally be subjected to enhanced punishment under G. L. c. 90, § 24(1)(a)(1), as appearing in St. 1982, c. 373, § 2, if he is convicted on a pending complaint charg-

ing him with operating a motor vehicle while under the influence of intoxicating liquor. As amended, effective September 1, 1982 (St. 1982, c. 373, § 20), G. L. c. 90, § 24 (1) (*a*) (1), material portions of which are quoted in the margin,[1] provides in its second paragraph that "[i]f the defendant has been previously convicted or assigned to an alcohol education or rehabilitation program by a court of the commonwealth because of a like violation within six years preceding the date of the commission of the offense for which he has been convicted, the defendant shall be punished" by a fine and by imprisonment for not less than seven days. It should be noted that imprisonment for at least seven days is mandatory on conviction of a "second offense."

The issue before us is whether the defendant's assignment to an alcohol education program in June, 1978, by a judge in the Concord Division of the District Court Department, in connection with a charge of operating a motor vehicle while under the influence of intoxicating liquor, may constitutionally be the basis for imposing the enhanced penalties prescribed by § 24 (1) (*a*) (1) if he is convicted of the

---

[1] G. L. c. 90, § 24 (1) (*a*) (1): "Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C, or the vapors of glue shall be punished by a fine of not less than one hundred nor more than one thousand dollars, or by imprisonment for not more than two years, or both.

"If the defendant has been previously convicted or assigned to an alcohol education or rehabilitation program by a court of the commonwealth because of a like violation within six years preceding the date of the commission of the offense for which he has been convicted, the defendant shall be punished by a fine of not less than three hundred nor more than one thousand dollars and by imprisonment for not less than seven days nor more than two years, provided that the sentence imposed upon such person shall not be reduced to less than seven days, nor suspended, nor shall any such person be eligible for probation, parole, or furlough or receive any deduction from his sentence for good conduct until he shall have served seven days of such sentence . . . ."

charge now pending against him in the Cambridge Division of the District Court Department alleging that a similar violation occurred on September 19, 1982. We conclude that the increased penalties of § 24 (1) (a) (1) properly apply to the defendant if he is convicted of the pending charge. We thus vacate the order of the motion judge in the Cambridge District Court which strikes so much of the pending complaint as alleges a "prior assignment to an alcohol education program" and which directs that the offense be treated as a first offense.

On June 2, 1978, the defendant was charged in the Concord District Court with operating a motor vehicle while under the influence of intoxicating liquor. On June 9, 1978, represented by counsel, he appeared and entered a plea of not guilty. He admitted to sufficient facts to warrant a finding of guilty, however, and a finding of guilty was entered. On June 23, 1978, a judge placed the defendant on probation, assigned him to an alcohol education program, and continued the case for one year. At some time thereafter the defendant completed the education program. On March 9, 1979, the case was advanced; the guilty finding was revoked; a not guilty finding was entered; and probation was continued. On June 23, 1979, probation was terminated and the defendant was discharged.[2]

---

[2] Apparently the practice of the judge in the Concord District Court in entering a guilty finding and then later entering a not guilty finding was not typical of the general practice in the District Courts. The judge in the Cambridge District Court commented on this atypical practice as follows:

"It would appear that the Court by its entries intended to treat the offense in the same manner as was done in other courts by simply imposing a continuance without a finding and dismissed in a year. In no case was there a trial on the merits, nor any indication of a notice to appeal the guilty finding. Such handling was a peculiarity and unique to the particular court wherein the charges were brought. The entry of March 9, 1979 of a finding of not guilty would not appear to have been made based upon a new trial or a trial on the merits nor a motion to revise and revoke."

The defendant sought by a separate motion to rely on the entry of "Not Guilty" in support of his claim that the charge should be treated as a first offense. He repeats the argument here. The Commonwealth in turn sug-

On September 20, 1982, a complaint was sought in the Cambridge District Court charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor in Arlington on September 19, 1982. The complaint alleges additionally that on or about June 23, 1978, in the Concord District Court the defendant "was given a continuance without a finding on a like offense and on that date was duly assigned to an alcohol program by the court." The defendant moved that the complaint be reduced or amended so as to charge only a first offense. He alleged that it was unconstitutional to consider an offense occurring prior to the effective date of the 1982 amendment of G. L. c. 90, § 24 (1) (a) (1), and that the amendment was vague because it did not inform the defendant of his rights.[3] The motion judge allowed that motion on October 20, 1982, and, as indicated above, entered an order consistent with that conclusion. He stated in a notation on the motion that he regarded the prior "offense" as an element of the second offense and concluded that the 1982 amendment could not reach back before its effective date for an element of that offense. He stated further that reliance on offenses committed prior to the enactment (on August 12, 1982) of St. 1982, c. 373, would violate the provisions in the Constitutions of the United States and the Commonwealth prohibiting ex post facto laws.

On November 29, 1982, the judge filed a memorandum, finding, and order on the defendant's motions to strike or

---

gests that the original guilty finding could be dispositive. We think that neither of the Concord judge's entries is significant, and we agree with the motion judge's comment that those entries were "that court's way of being consistent with the majority of other courts that 'continued without a finding.'"

[3] He relied on claims that treating the offense as a second offense would: (1) improperly disregard the "Not Guilty" finding as res judicata; (2) constitute double jeopardy; (3) deny him equal protection of the laws as against persons whose cases were continued without a finding but who were not assigned to an alcohol education program; (4) apply an unconstitutionally vague statute to him; (5) deny him due process of law, and (6) violate ex post facto principles.

amend. He repeated his earlier conclusion that "involve-ment in an alcohol education program *prior* to the effective date of the statute cannot constitute an element of a crime created after the original offense." He again referred to ex post facto principles and also relied on due process of law considerations. He said: "As a great social experiment, the alcohol education program practically coerced charged-de-fendants to enter the program. In most courts there was no loss of driving privileges in the program, where a conviction involved a one-year loss. There were few cases where a charged-defendant risked the severe penalty of loss of driv-ing privileges by trial on the merits. It would seem to be a violation of the fundamental fairness doctrine to now hold the willing participant in the same category as one con-victed."

If the defendant had pleaded guilty to, or had been found guilty of, the first offense, he would have no meritorious claim that the subsequently prescribed, enhanced punish-ment for a future conviction of a like crime violates ex post facto principles expressed in art. 1, § 10, cl. 1, of the Con-stitution of the United States (applied to the States through the Fourteenth Amendment), and in art. 24 of the Massachusetts Declaration of Rights. *Sayles* v. *Common-wealth*, 373 Mass. 856 (1977). *Commonwealth* v. *Graves*, 155 Mass. 163, 164-165 (1892). *Ross's Case*, 2 Pick. 165, 169-170 (1824). *Spencer* v. *Texas*, 385 U.S. 554, 559-560 (1967), and cases cited.[4] The enhanced punishment is im-posed for a subsequent violation; it is not retroactive punish-ment for the first. The complaint should set forth any former conviction that may be relied on to justify greater punish-

---

[4] Recently, several State courts have rejected ex post facto law challen-ges to the imposition of enhanced punishment where, after an earlier con-viction for driving under the influence of intoxicating liquor, the statutory penalty for a subsequent offense was increased, and the defendant was thereafter convicted of a subsequent offense. See *Danks* v. *State*, 619 P.2d 720, 722 (Alaska 1980); *Sims* v. *State*, 262 Ark. 288, 289-290 (1977); *State ex rel. Van Natta* v. *Rising*, 262 Ind. 33, 35 (1974). See also *State* v. *Levey*, 122 N.H. 375, 378 (1982).

ment on conviction (*Commonwealth* v. *Harrington,* 130 Mass. 35, 36 [1880]), but the prior offenses may not be referred to during the trial, except to impeach the defendant if he testifies (G. L. c. 278, § 11A). The prior offense is not part of the crime charged; it relates only to punishment. *McDonald* v. *Commonwealth,* 173 Mass. 322, 326-327 (1899), judgment aff'd, 180 U.S. 311, 313 (1901). A defendant, if convicted of a charge, will be entitled to a separate trial on the issue whether he had been convicted of a prior, like offense. G. L. c. 278, § 11A.

The circumstances of this case, not involving a prior conviction, are different. The defendant had not been "previously convicted" but, within the meaning of G. L. c. 90, § 24(1) (*a*) (1), he had been "assigned to an alcohol education . . . program by a court of the commonwealth because of a like violation within six years preceding the date of the [alleged] commission of the offense" for which he has been charged. We conclude that a person who admitted to sufficient facts so as to warrant a finding of guilty and whose case was continued on his assignment to an alcohol education program falls within the class described in the statute. The 1982 amendment intended to reach such a person by treating an assignment to such a program as being "because of a like violation." [5]

The question is whether there is any constitutional prohibition against applying § 24 (1) (*a*) (1) as it was intended. We turn first to the legislative treatment in recent years of the serious problem of intoxicated drivers on the highways of the Commonwealth. In doing so we shall address the defendant's claim that in 1978 he was virtually compelled to enter the alcohol education program and that it is fundamentally unfair, in a constitutional due process sense, to give effect to his prior participation in such a program in measuring the punishment to be imposed on him if he is convicted of the pending charge.

---

[5] We express no opinion on whether assignment to an alcohol education program without an "admission to sufficient facts" (if such situation in fact ever occurred) would fall within the statutory language.

Under the law in effect at the time the defendant was first charged with operating a motor vehicle while under the influence of intoxicating liquor, and from the effective date of St. 1975, c. 505, §§ 1 and 2, which rewrote G. L. c. 90, §§ 24D and 24E, any individual charged with so operating a motor vehicle could have his case continued without a finding, and, with his consent, he could be placed on probation. As a condition of probation, he had to be assigned to an alcohol education program, but his driver's license did not have to be suspended. See Senate Committee on Post Audit and Oversight, Drinking and Driving in Massachusetts: Statutory Options and Recommendations, at 17 (February, 1982) (hereinafter referred to as the 1982 Post Audit Committee report). Assignment to an education program, first expressed in a 1974 amendment of G. L. c. 90 by the insertion of §§ 24D and 24E (see St. 1974, c. 647, § 1), has been characterized as a "health-legal" approach," and was selected as the Commonwealth's principal method of dealing with intoxicated drivers. 1982 Post Audit Committee report, at 17.[6]

In 1978, the year in which the defendant was first charged with driving while under the influence, 63% of the approximately 21,000 persons arraigned for driving while under the influence of intoxicating liquor had their cases continued without a finding and were referred to an alcohol education program. Research Project, Office of Commis-

---

[6] On this subject, the 1982 Post Audit Committee report stated:

"The general objective of a health-legal system is to use the resources and methods of the traffic law system and the public health system to reduce the incidence of drinking and driving among an identified target group. Underlying that system is the recognition that neither traffic law nor the public health system alone can adequately deal with the problem. The combined measures of both systems are needed to bring about the desired behavioral changes through the application of individually tailored mixtures of punishment and treatment. Thus, the health-legal system must apprehend and arrange for the punishment and treatment of drinking drivers in the target population. The integrity of such a system depends upon the willingness and ability of its components to recognize that within the target population there are offenders who pose measurably higher degrees of risk to society."

sioner of Probation, Driving Under the Influence of Liquor: Dispositions and Placements in Drivers Alcohol Education Programs 1977-1981, at 2-4 (March 30, 1982). Of those similarly charged in 1978 whose cases were tried (the remaining 37 %) approximately two-thirds were found guilty. *Id.* at 4.[7] The 1982 Post Audit Committee report commented that law enforcement officials believed the most glaring deficiency of the existing law was the presence of the multiple offender in the class of persons who could be referred to an alcohol education program. *Id.* at 18. That report cited a recent study indicating that a small number of persons are responsible for a high proportion of the repeat offenses. *Id.* at 24. The committee's report recommended, among other things, that there be a differentiation in sanctions between first and subsequent offenders. *Id.* at 38. Chapter 373 of the Acts of 1982, enacted within six months of the 1982 Post Audit Committee report, provided for increased penalties for operating a motor vehicle while under the influence of alcohol and contained the amendment of G. L. c. 90, § 24 (1) (*a*) (1), which is the subject of this dispute.

We come then to the question whether constitutional principles bar the imposition of enhanced penalties on a person who, having been assigned to an alcohol education program prior to September 1, 1982, is convicted of driving on or after September 1, 1982, while under the influence of intoxicating liquor. The issue involves a question of fundamental fairness in a due process sense. Although the concept underlying the prohibition against ex post facto laws is also based on fundamental fairness, we see no violation of the prohibition against ex post facto laws. Any enhanced penalty will be imposed solely because of the second incident. As was noted earlier in this opinion, a defendant would have no valid ex post facto law claim if he had been

---

[7] In 1981, 79 % of all persons charged with "operating under" had their cases continued without a finding and more than 80 % of those tried were found guilty. *Id.*

convicted on the first charge. We see no distinction of constitutional dimensions between a conviction and a previous assignment to an alcohol education program.

We conclude that due process considerations do not prevent the Legislature from treating a pre-September 1, 1982, assignment to an alcohol education program as justification for an enhanced penalty if a defendant is convicted of operating a motor vehicle while under the influence of intoxicating liquor after that date. The defendant's claim that he did not have fair warning is without merit. The fair warning appears in the statute characterizing the consequences of any future violation and conviction. We see nothing in G. L. c. 90, § 24 (1) (*a*) (1), that is vague in a due process sense as applied to this case.

We recognize that, in these circumstances, the defendant's admission to a finding of facts sufficient to warrant a finding of guilty cannot be given the effect of a guilty plea. *Commonwealth* v. *Duquette*, 386 Mass. 834, 842-843 (1982). This is so because, if the admission were to be treated as the equivalent of a guilty plea, the record does not show that the defendant was advised of the constitutional rights he was waiving by making that admission.

The defendant's basic due process argument is that the system in effect in 1978 encouraged him, virtually compelled him, to take the safe and easier option of entering an alcohol education program rather than going to trial. He points to the fact that, if convicted, he would have lost his license to drive and would have had a criminal record. Even if not convicted, he argues, he would have incurred greater legal expenses by going to trial rather than by electing the education program.[8]

---

[8] The option elected was not without its costs. Unless he was indigent, he incurred legal expenses, and he was obliged to pay a $200 fee to enter the education program. G. L. c. 90, § 24D, as amended through St. 1975, c. 758, § 4. He had to participate in and satisfactorily complete the program. Also, he may have been subject to a considerable surcharge on his motor vehicle liability insurance premiums because of his assignment to an education program. G. L. c. 175, § 113P. See 1982 Post Audit Committee report, at 25.

We find the "compulsion" argument insufficient to demonstrate fundamental unfairness. Not everyone confronted with a problem similar to the defendant's exercised the option he did. In 1978, approximately one person in three, similarly charged, elected to put the Commonwealth to the burden of proving its case. The defendant elected to participate in an administrative education program designed to instruct him about the problems of driving while under the influence of alcohol. In consenting to that assignment, he admitted that there were sufficient facts to warrant a finding of guilt. That admission and the assignment to an education program are sufficient to justify the Legislature's imposing greater penalties on a person who, in spite of participating in the alcohol education program and completing it, is later shown beyond a reasonable doubt to have failed to conduct himself according to the lesson that he should have learned. We are aware of no authority that makes it constitutionally impermissible to treat a person in the position of the defendant as one appropriately subject to enhanced punishment on a subsequent conviction. He may not be a "second offender" in the strict sense, but he fairly may be so treated, as he is by G. L. c. 90, § 24 (1) (a) (1).

Chapter 373 of the Acts of 1982 deals with a problem of Statewide and national concern. The legislative judgment to use forceful measures to deal with this problem, particularly as to persons who have been given one chance and have subsequently failed to react in a socially appropriate way, is not fundamentally unfair. As the Senate Committee on Post Audit and Oversight emphasized recently, "[i]n the arguments surrounding 'fairness,' one forgets that these offenders have already had the benefit of alcohol education and more than perhaps any other group have been apprised of the seriousness of the offense." Interim Report: Senate Committee on Post Audit and Oversight, "Driving Under" in Massachusetts: The First 100 days, at 10 (January, 1983).[9]

---

[9] The Senate Committee expanded on the subject of "fairness" as follows:

We vacate the order of the motion judge which strikes from the complaint the reference to the defendant's prior assignment to an alcohol education program and which directs that the offense be treated as a first offense. A new order shall be entered in the Cambridge District Court denying the defendant's motion to reduce or amend the complaint.

*So ordered.*

"Chapter 373 went through three legislative committees before being enacted by the legislature in its final form. While this issue was raised on a number of occasions, the Post Audit Committee felt that the problem was and remains serious enough to warrant this approach, that is, a classification which differentiates between those drunk drivers who are *clearly* first offenders and those who have pled to the facts in a prior case, who attended supervised alcohol education, and whose cases were continued without a finding of either innocence or guilt.

"The Committee recognizes that the courts will ultimately determine whether the legislature can decide to punish more severely a clearly defined class of offenders who have already been assigned to an alcohol education program by a court for a prior offense. But it remains the Committee's opinion that this position was not only reasonable but demanded by the gravity of the threat to the public. And for prior *convictions,* little doubt exists regarding the solid legal basis for increasing the penalty for repeat offenders."