NOT DESIGNATED FOR PUBLICATION

No. 120,696

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF T.B.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed September 27, 2019. Affirmed.

*Christopher T. Etzel*, of Onaga, for appellant.

*Sherri Schuck*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL AND WARNER, JJ.

POWELL, J.: T.B., who is no longer a juvenile, entered into a diversion agreement with the State after being charged with theft and criminal trespass. Several months later, the State sought to revoke T.B.'s diversion, alleging he had violated it. The district court conducted an evidentiary hearing, and after taking evidence, revoked T.B.'s diversion, found him guilty, and sentenced him to time served. T.B. now appeals, arguing there was insufficient evidence to revoke his diversion. For reasons more fully explained below, we disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2017, the State charged T.B., then a minor, in juvenile court with the misdemeanor offenses of theft and criminal trespass. T.B. entered into a diversion agreement with the State on January 24, 2018. In May, the State moved to revoke T.B.'s

1

diversion for (1) failure to pay his required monthly diversion payment of $85; (2) failure to complete his required monthly check-in; and (3) failure to complete the required STOPlifting course. The district magistrate judge conducted a hearing five months later, revoked T.B.'s diversion, and adjudicated him as a juvenile offender based on the stipulated facts contained in the diversion agreement. T.B. then appealed to the district court.

In January 2019, the district court held a de novo hearing. The State called two witnesses: Stephanie O'Shea, T.B.'s original diversion officer, and Darla King, T.B.'s current diversion officer. O'Shea testified to the particulars of the diversion agreement. Among the requirements contained in the diversion agreement was that T.B. was required to pay $85 per month in fees. T.B. missed his first payment in February but then made a double payment in March before missing a payment again in April. Based on the missed payment in April, O'Shea moved to revoke T.B.'s diversion. O'Shea also moved to revoke T.B.'s diversion because he failed to turn in his monthly check-in form and did not complete the STOPlifting course as also required by the diversion agreement. According to O'Shea, when she left the diversion office on May 10, 2019, T.B. had not acted to correct his violations. On cross-examination, O'Shea testified that the STOPlifting course typically notified the county attorney's office by e-mail upon a defendant's completion but admitted, "There was a time or two where [she] didn't get the completion, but it had been done."

King testified that T.B. never contacted her after she replaced O'Shea as the diversion officer. Moreover, no one in the county attorney's office reported any contact with T.B. to King. According to King, the diversion office's practice is to allow contact from the defendant, as well as payments, even after the filing of a motion to revoke diversion.

T.B. testified in his defense and admitted that he did not pay the required fee in April because he was in jail in Riley County. T.B. claimed that he had tried to call the county attorney's office, but no one would let him speak to the diversion officer. T.B. claimed he called at least 10 times and was told he was not allowed to speak with the diversion officer because his diversion was being revoked. On cross-examination, T.B. could not identify with whom he talked or when he had called.

T.B. also testified that he took the STOPlifting course at the end of March 2018. He claimed that the county attorney's office provided him with a link in his diversion letter but then said he had never received the letter. T.B. believed a user name was provided to him for the course and that he had to create a password. T.B. explained the course had videos to watch with questions to answer and he believed there were more than five videos but was not sure. T.B. claimed the STOPlifting course did not require him to enter any information regarding his case number or the county attorney's office.

The State recalled King as a rebuttal witness. King testified that when defendants take the STOPlifting course, they have to enter their case number and information and cannot participate in the course until that information is entered and the course links to the county attorney's office. Upon completion, the course notifies the defendants that they have completed it and gives them a copy of the completion certificate.

At the hearing's conclusion, the district court found T.B. had not completed the STOPlifting course, had failed to make the $85 April payment, and had not submitted his monthly check-in. The district court revoked T.B.'s diversion, found him guilty based upon the stipulated facts in the diversion agreement, and sentenced him to 28 days' time served and payment of attorney fees from his appeal to the district court.

T.B. timely appeals.

WAS THERE SUFFICIENT EVIDENCE TO REVOKE T.B.'S DIVERSION AGREEMENT?

T.B. argues the State presented insufficient evidence to revoke his diversion.

However, the parties differ as to our standard of review. To quote the State's brief: "To sustain an order revoking probation, the violation must be established by a preponderance of the evidence." T.B. argues that "[w]hen the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews all the evidence in the light most favorable to the prosecution to determine whether a rational fact finder could have found the defendant guilty beyond the reasonable doubt." We disagree with both parties.

Generally speaking, the standard of review for sufficiency of the evidence in a juvenile adjudication "is whether, after review of all the evidence viewed in a light most favorable to the petitioner, the appellate court is convinced that a rational factfinder could have found the respondent guilty beyond a reasonable doubt." *In re J.A.B.*, 31 Kan. App. 2d 1017, 1022, 77 P.3d 156, *rev. denied* 277 Kan. 924 (2003). However, T.B. is not challenging the sufficiency of the evidence used to adjudicate his guilt. Instead, we are being asked to consider whether sufficient evidence supports the district court's finding that T.B. breached the diversion agreement.

A diversion agreement is a contract entered into between the State and a defendant after a complaint has been filed but before the defendant has been convicted. See *State v. Chamberlain*, 280 Kan. 241, 245, 120 P.3d 319 (2005). A diversion agreement is the "specification of formal terms and conditions which a defendant must fulfill in order to have the charges against him or her dismissed." K.S.A. 22-2906(4). If the district court finds that the defendant has failed to fulfill the terms of the diversion agreement, it is required to revoke the diversion and resume criminal proceedings against the defendant. K.S.A. 22-2911(a). Diversion agreements are similar to plea agreements and are to be interpreted in accordance with contract principles. See *State v. Tims*, 302 Kan. 536, 546,

4

355 P.3d 660 (2015); *In re Habeas Corpus Application of Tolle*, 18 Kan. App. 2d 491, 496, 856 P.2d 944, *rev. denied* 253 Kan. 858 (1993).

Because the diversion agreement is a contract between the State and T.B., the State merely had the burden of proving by a preponderance of the evidence that T.B. violated the terms of the diversion agreement. See *Hoke v. Zent*, 10 Kan. App. 583, 63 P. 1128, 1129 (1901); 17B C.J.S. Contracts § 998; see also *Neises v. Solomon State Bank*, 236 Kan. 767, 776, 696 P.2d 372 (1985) (where unlawful act was breach of contract, finding "no error in the trial court's application of the preponderance of the evidence standard"). "A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true." *State v. Lloyd*, 52 Kan. App. 2d 780, Syl. ¶ 2, 375 P.3d 1013 (2016). Whether a party has breached a diversion agreement or contract is a question of fact. See *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1030, 269 P.3d 846 (2012).

As a result, given that T.B. challenges whether the State proved he breached the diversion agreement by a preponderance of the evidence, our standard of review is whether sufficient evidence supports the district court's finding that T.B. breached the diversion agreement. When a district court's factual finding is challenged for insufficiency of the evidence, we do not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the district court's factual finding, we will not disturb this finding on appeal. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

A.      *T.B.'s failure to make the April 2018 payment*

The diversion agreement required T.B. to make a payment of $85 on the 24th of each month. T.B. conceded he missed April's payment but offered the mitigating fact that he did so because he was incarcerated. He also claimed that he tried to contact the

diversion officer, but the county attorney's office refused to let him speak with her. Both O'Shea and King testified that they never received a phone call or letter from T.B.

When viewing this evidence in a light most favorable to the State, a rational fact-finder could conclude that T.B. breached this requirement of his diversion agreement.

B.     *T.B.'s failure to complete the required monthly check-in*

The diversion agreement required T.B. to submit a monthly check-in form. T.B. admitted his failure to submit the April 2018 check-in form but offered evidence in mitigation of this fact. T.B. testified that he could not submit the form because he was incarcerated in Riley County and he did not have the necessary check-in form with him. T.B. said he called the county attorney's office at least 10 times and wrote a letter, but no one would let him speak to O'Shea or King. Both O'Shea and King testified they did not receive any communication from T.B.

Because it is undisputed that T.B.'s diversion agreement required him to submit a monthly check-in form and T.B. conceded he failed to submit the April 2018 form, sufficient evidence supports the district court's finding that T.B. breached this requirement of the diversion agreement.

C.     *T.B.'s failure to complete the required STOPlifting course*

T.B.'s diversion agreement also required him to complete an online course called STOPlifting and submit proof of completion to the county attorney's office within 90 days of signing the diversion agreement. Unlike the first two issues, where T.B. conceded his failures but offered evidence in mitigation, here the State and T.B. disagree on whether he completed the STOPlifting course.

At the hearing, O'Shea testified that the county attorney's office never received proof of T.B.'s completion of the STOPlifting course. However, O'Shea admitted that there had been occasions when the course was completed but she did not receive proof of completion. T.B. testified he had completed the course at the end of March 2018, but he was not required to submit or print anything. While T.B. stated a username was provided, he created the password but he did not have to provide his case number or any information regarding the county attorney's office. T.B. stated that he had to watch videos and answer questions to complete the course. On rebuttal, King testified that T.B. would not have been able to complete the course without his case information.

The district court found the State's evidence more persuasive and found O'Shea's and King's testimony more credible than T.B.'s. As we do not resolve conflicting testimony or make witness credibility determinations, when reviewing the evidence in the light most favorable to the State, we hold the record contains sufficient evidence to support the district court's factual finding that T.B. failed to complete the course.

Sufficient evidence supports the district court's finding that T.B. breached the diversion agreement. As a result, the district court did not err by revoking T.B.'s diversion, finding him guilty based upon the stipulated facts, and sentencing him.

Affirmed.